Opinion Issued October 5, 2006













In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00559-CR




JOE IRVIN MCKISSICK, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 240th District Court
Fort Bend County, Texas 
Trial Court Cause No. 37350


 
O P I N I O N
Appellant, Joe Irvin McKissick, pleaded guilty to 19 counts of possession of
child pornography. See Tex. Pen. Code Ann. § 43.26 (Vernon 2003). The trial court
assessed punishment at eight years’ probation and a $300 fine. In his sole point of
error, appellant argues that the trial court erred by denying his motion to suppress
evidence collected from his personal computer pursuant to a search warrant.
We affirm. BACKGROUND
          On March 29, 2002, Robert Kite, a lifeguard for the Galveston County Sheriff’s
Department, received a radio dispatch stating that a man appeared to be taking
pictures of young girls on Galveston Beach without their permission. Kite began to
search for the man and observed appellant photographing the mid-sections of two girls
who were walking along the beach. Kite stated that it did not appear that the girls had
given appellant permission to photograph them. He estimated the girls were between
the ages of 10 and 12. Kite approached appellant, identified himself, and asked
appellant to sit on a nearby bench while Kite contacted the police. 
          Galveston Police Officers B. Gately and R. Steadham responded to Kite’s call. 
Officer Gately informed appellant that a recently enacted statute prohibited
photographing another person for the purposes of sexual gratification or arousal
without first obtaining that person’s consent. The statute cited by Gately, section
21.15 of the Texas Penal Code, provides that:
(a)A person commits an offense if the person photographs or by
videotape or other electronic means visually records another:
 
(1) without the other person’s consent; and
 
(2) with the intent to arouse or gratify the sexual desire of any
person.
 
(b) An offense under this section is a state jail felony.Act of June 11, 2001, 77th Leg., R.S., ch. 458, sec. 1, 2001 Tex. Gen. Laws 893, 893
(current version at Tex. Pen. Code Ann. § 21.15 (Vernon Supp. 2005)). Appellant
stated that he had been taking scenic pictures of the beach and water, and he granted
the officers permission to view the photographs stored on his digital camera. 
          Kite turned appellant’s camera on, and, using its preview pane, he and Officer
Steadham examined the photographs stored on the camera. Kite described seeing
pictures which matched those he had earlier witnessed appellant taking of the two
young girls walking along the beach. Officer Steadham observed a picture of “the
rear-end of a young female” and another depicting the “crotch area of a young female”
who appeared to be exiting the Galveston ferry boat. Officer Gately then viewed the
photographs, observing “the back of a female” and “a waist shot.” Officer Gately
testified that the photographs were inconsistent with appellant’s statement that he had
been taking general scenic photographs of the beach and ocean. Appellant was taken
into custody and transported to a police station. 
          Detective R. Sunley, who is assigned to the Galveston Police Department’s
Crimes Against Children section, was called to question appellant. Appellant
admitted that he had been taking pictures of girls, but denied knowing that doing so
for the purposes of sexual gratification or arousal was against the law. See Tex. Pen.
Code Ann. § 21.15. Appellant further stated that after taking pictures of girls, he
would transfer the photos from his digital camera to his personal computer. Detective
Sunley reviewed the pictures on appellant’s camera and observed images depicting
“the front area and back area” of young girls. When he asked if appellant traded
pictures over the internet, appellant became nervous and evaded the question. 
Appellant was then charged with the offense of improper photography or visual
recording. See id. 
          Subsequently, Detective Sunley prepared an affidavit to present to a magistrate
to obtain a warrant to search appellant’s residence, located in Fort Bend County, for
evidence of improper photography or visual recording. See id. Detective Sunley’s
affidavit, subscribed and sworn to the magistrate on April 2, 2002, four days after
appellant’s arrest, read as follows:
The undersigned Affiant, being a Detective of the Galveston
Police Department, and being duly sworn, on oath makes the
following statements:
 
          1.       My name is Robert Sunley and I am a detective with the
Galveston Police Department, located in Galveston County,
Texas. I am assigned to the investigation relative to: Joe
McKissick, who is being charged with the offense of Improper
Visual Record to Arouse/Gratify;
 
          2.      Through my investigation, I have reason to believe that Joe
McKissick, on or about March 29, 2002, in Galveston, Texas, did
then and there photograph another without that person’s consent
with the intent to gratify his sexual desire, to wit, photographing
the buttocks of several female beach goers. 
 
          3.      Through my investigation, I have reason to believe that on march
[sic] 29, 2002, the Galveston Police Department received a report
of a man taking photographs of young females. Officer Bobby
Steadham and Officer B. Gately responded to the call at 53rd
Seawall, Galveston County, Texas, and, after searching for a few
minutes, found a subject, later identified as Joe McKissick, who
matched the description of the man taking the pictures of the
young females. 
 
          4.      Through my investigation, I have reason to believe that Robert
Kite of the Galveston County Sheriff’s Department Beach Patrol
received a dispatch that a man was taking photographs of young
females with a digital camera. Robert Kite observed a man
matching the description of the subject taking photographs of
young females. As Robert Kite observed the man, later identified
as Joe McKissick, take a picture of two 12 - 14 year old girls from
the waist down. He then detained the subject for Galveston Police
Officers.
 
          5.      Through my investigation I have reason to believe that on March
29, 2002, Officers Steadham and Gately approached the man
detained by Robert Kite and identified him as Joe Irvin
McKissick, who resides at 509 Brand Lane #90, Stafford, Fort
Bend County, Texas. They asked Joe McKissick if they could
view the photographs that he had taken, and Joe McKissick agreed
to allow Officers Steadham and Gately to view the photographs. 
          6.      Through my investigations, I have reason to believe that the
photographs Officers Steadham and McKissick [sic] viewed on
Joe McKissick’s camera were mostly those of . . . young female
children showing them only from the waist down. There were
pictures taken of frontal and rear views. It was obvious the photos
were taken without the knowledge or consent of the people. 
Officers Steadham and Gately informed Joe McKissick that this
was possibly a criminal offense and gave him a Miranda warning. 
          7.      Through my investigation, I have reason to believe that when
questioned by Officers Steadham and Gately, Joe McKissick
denied knowing that taking these photgraphs was a crime. Joe
McKissick was transported to Galveston Police Station. 
 
          8.      Through my investigation, I interviewed Joe McKissick at the
Galveston Police Department. I gave Joe McKissick his Miranda
warnings, and he agreed to waive his rights and speak with me
about the case. Joe McKissick stated that he was taking pictures
and that he did not know it was against the law. He further stated
that he had taken pictures of girls before and after he took the
photographs, he downloaded them onto his computer at his home
located at 509 Brand Lane #90, Stafford, Fort Bend County,
Texas. Joe McKissick was asked if he traded any of his pictures
on the Internet, he became very nervous and did not answer the
question, instead stating that he did not know his actions were
illegal. I advised him of the charges and his bond amount. 
 
          9.       I contacted Deputy Sean Costello of the Fort Bend County
Sheriff’s Office and asked him to get a description of the property
located at 509 Brand Lane #90, Stafford, Fort Bend County,
Texas. Deputy Costello reported to me that the residence
belonged to Joe McKissick located at 509 Brand Lane #90,
Stafford, Fort Bend County, Texas, is in the Fountain Head
Mobile Home Villa. He reported that it is light brown with tan
trim and further advised me that the home has the number “90"
on it, and the property also contains a small shed on the east side
of the property. 
 
          10.     I know through my investigation that Joe McKissick says he has
a personal computer on which he downloads pictures of young
females that he takes without their permission. 
 
          11.    In my experience as a law enforcement officer, persons who
sexually exploit children keep copies of their correspondence,
contacts with and photographs of children. In my experience such
contacts, correspondence, and photographs are generally kept on
a home personal computer;
 
          12.    In my experience as a law enforcement officer, correspondence
and other contacts with children by sexual perpetrators are
generally located in books, magazines, videotapes, still
photographs, and reproductions of the above, computer disks, hard
ware [sic] and software of computers located at the residence and
on the property of the person exploiting children. 
 
          13.    It is my belief, based on my investigation and my experience as a
law enforcement officer, that Joe McKissick possesses such
correspondence and contacts in his books, photographs, magazine,
videotapes, computer disks, computer drives, DVD ROMs, CD
ROMs, computer tapes and on the hardware and software of his
computer at his residence and property located at 509 Brand Lane
#90, Stafford, Fort Bend County, Texas. 
  
The magistrate agreed to issue a search warrant, and Detective Sunley, assisted by
two other detectives, executed the search later that day. 
          Pursuant to the search, appellant’s personal computer was seized


 and
transported to the Special Crimes unit of the Texas Department of Public Safety for
analysis of the computer’s hard drive. The analysis resulted in the discovery of child
pornography, and appellant was charged in Fort Bend County with possession of child
pornography.



          On August 27, 2002, a Galveston County grand jury no-billed appellant’s
charge for improper photography or visual recording. On December 9, 2002,
appellant was indicted in Fort Bend County on 19 counts of possession of child
pornography.


 On July 7, 2003, appellant filed a motion to suppress the search of his
residence, arguing that the affidavit Detective Sunley used to obtain the warrant was
fatally flawed. After a hearing, the trial court denied appellant’s motion to suppress
on August 30, 2004. DISCUSSION
          In his sole point of error, appellant contends that the trial court improperly
denied his motion to suppress evidence obtained pursuant to the search warrant
obtained by Detective Sunley. According to appellant, the affidavit Detective Sunley
used to procure the warrant was fatally flawed because it (1) omitted material facts,
(2) conveyed stale information, and (3) relied on conclusory statements, thereby
rendering the warrant insufficient to show probable cause. 
          Standard of Review
          In reviewing the trial court’s ruling on a motion to suppress, we apply a
bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000). We give almost total deference to the trial court’s determination of
historical facts that depend on credibility, while we conduct a de novo review of the
trial court’s application of the law to those facts. Id. We review de novo the trial
court’s application of the law of search and seizure and probable cause. State v. Ross,
32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Wilson v. State, 98 S.W.3d 265, 271
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). Appellate review of an affidavit
in support of a search warrant, however, is not de novo; rather, great deference is
given to the magistrate’s determination of probable cause. Illinois v. Gates, 462 U.S.
213, 236, 103 S. Ct. 2317, 2331 (1983); Uresti v. State, 98 S.W.3d 321, 334 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). The test for determination of probable
cause is whether the magistrate had a substantial basis for concluding that a search
would uncover evidence of wrongdoing. Gates, 462 U.S. at 236, 103 S. Ct. at 2331.
Probable cause to support the issuance of a search warrant exists when the facts
submitted to the magistrate are sufficient to justify a conclusion that the object of the
search is probably on the premises to be searched at the time the warrant is issued.
Cassias v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986). 
          To justify the issuance of a search warrant, the affidavit submitted in support
must set forth facts sufficient to establish probable cause that (1) a specific offense has
been committed; (2) the specifically described property or items to be searched for or
seized constitute evidence of that offense; and (3) the property or items constituting
such evidence are located at the particular place to be searched. Tex. Code Crim.
Proc. Ann. art. 18.01(c) (Vernon Supp. 2005). Whether the facts mentioned in the
affidavit are adequate to establish probable cause depends on the totality of the
circumstances. Ramos v. State, 934 S.W.2d 358, 362–63 (Tex. Crim. App. 1996). 
Statements made during a motion to suppress hearing do not factor into the probable
cause determination; rather, we examine only the four corners of the affidavit to
determine whether probable cause exists. Massey v. State, 933 S.W.2d 141, 148 (Tex.
Crim. App. 1996); Wilson, 98 S.W.3d at 270–71. Reasonable inferences may be
drawn from the affidavit, and the affidavit must be interpreted in a common sense and
realistic manner. Wilson, 98 S.W.3d at 271.
          The task of a magistrate in issuing a search warrant is to make a practical,
common sense decision whether, given all the circumstances set forth in the warrant’s
supporting affidavit, including the veracity and basis of knowledge of persons
supplying hearsay information, there is a fair probability that contraband or evidence
of a crime will be found in a particular place. Gates, 462 U.S. at 238, 103 S. Ct. at
2332. The duty of a reviewing court is simply to determine whether, considering the
totality of the circumstances, the magistrate had a substantial basis for concluding that
probable cause existed to support the issuance of the warrant when viewing the
affidavit. Id.
          Did the Trial Court Err in Denying Appellant’s Motion to Suppress?
          Appellant contends in a single point of error that the search warrant issued
improperly because the affidavit upon which it was based (1) omitted material facts;
(2) conveyed stale information; and (3) relied on conclusory statements. 
1. Material Omissions
          Appellant first argues that Detective Sunley’s affidavit was compromised by
material omissions whose inclusion would have rendered the affidavit insufficient to
support a finding of probable cause to support the issuance of the warrant. Appellant
specifically refers to two purported material omissions. First, he notes that Detective
Sunley’s affidavit does not indicate that the subjects of appellant’s photographs were
clothed. Instead, the affidavit simply states that the photographs depicted “the
buttocks of several female beach goers” and “two 12-14 year old girls from the waist
down.” According to appellant, the affidavit would have been insufficient to support
a finding of probable cause if it had directly stated that the girls portrayed in the
photographs were clothed. Second, appellant notes that Detective Sunley failed to
state that he had never before investigated a case pursuant to section 21.15 of the
Texas Penal Code. In the affidavit, Detective Sunley states that in his experience as
a law enforcement officer “persons who sexually exploit children keep copies of their
. . . photographs of children . . . generally . . . on a home personal computer.” 
According to appellant, the magistrate would not have found probable cause to issue
the warrant had she known that the experiences to which Detective Sunley referred
did not involve investigations pursuant to section 21.15.
          In Franks v. Delaware, the United States Supreme Court recognized that if an
affirmative misrepresentation is knowingly included in a probable cause affidavit in
support of a search warrant, and the misrepresentation is material and necessary to
establishing probable cause, the warrant is rendered invalid under the Fourth
Amendment. See 438 U.S. 154, 164–65, 98 S. Ct. 2674, 2680–81 (1978). This
exclusionary rule does not extend to instances in which the police are merely negligent
in collecting the facts alleged in the affidavit. Id. at 170, 98 S. Ct. at 2683. The
affidavit must make a truthful showing of probable cause “in the sense that the
information put forth is believed or appropriately accepted by the affiant as true.” Id.
at 165, 98 S. Ct. at 2681. A misstatement in an affidavit that is the result of simple
negligence or inadvertence, as opposed to reckless disregard for the truth, will not
make the warrant invalid. See Dancy v. State, 728 S.W.2d 772, 783 (Tex. Crim. App.
1987). 
          The Texas Court of Criminal Appeals has not yet recognized that a Franks
analysis pertains to omissions as well as false statements. See Brooks v. State, 642
S.W.2d 791, 796–97 (Tex. Crim. App. [Panel Op.] 1982). However, the Fifth Circuit,
along with other Texas Courts of Appeals, including our own, has concluded that
allegations of material omissions are to be treated essentially the same as claims of
material misstatements. See United States v. Martin, 615 F.2d 318, 328 (5th Cir.
1980); Blake v. State, 125 S.W.3d 717, 724 (Tex. App.—Houston [1st Dist.] 2003, no
pet.); Heitman v. State, 789 S.W.2d 607, 610–11 (Tex. App.—Dallas 1990, pet. ref’d); 
Melton v. State, 750 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1988, no
pet.).
          Here, appellant’s contentions are without merit because the inclusion of the
omissions he cites would not render the affidavit, read as a whole, insufficient to show
probable cause. See Blake, 125 S.W.3d at 724. Regarding the affidavit’s failure to
note that the subjects of appellant’s photographs were clothed, there is no condition
precedent in section 21.15 regarding nudity. See Tex. Pen. Code Ann. § 21.15. 
Section 21.15 simply states that an offense occurs if one person photographs another
without consent and for the purposes of arousing or gratifying the sexual desire of any
person. See id. Detective Sunley’s affidavit provides that (1) appellant was taking
photographs of girls walking along Galveston Beach without their consent; (2) the
photographs depicted the girls from their waist down, particularly their buttocks; and
(3) appellant had taken pictures of girls before and downloaded them onto his
computer. Based on these statements, we conclude that after drawing reasonable
inferences


 and considering the totality of the circumstances,


 a magistrate who knew
for certain that the girls were clothed, could nevertheless have reasonably found the
affidavit sufficient to show probable cause. 
          Appellant’s argument regarding Detective Sunley’s failure to disclose in the
affidavit that he had never before investigated a case pursuant to section 21.15 fails
for similar reasons. Paragraph 1 of the affidavit states that Sunley is a Detective with
the Galveston Police Department. Paragraphs 11 and 12, referring to Detective
Sunley’s experience, state: 
          11.    In my experience as a law enforcement officer, persons who sexually
exploit children keep copies of their correspondence, contacts with and
photographs of children. In my experience such contacts,
correspondence, and photographs are generally kept on a home personal
computer;
 
          12.    In my experience as a law enforcement officer, correspondence and other
contacts with children by sexual perpetrators are generally located in
books, magazines, videotapes, still photographs, and reproductions of the
above, computer disks, hard ware [sic] and software of computers
located at the residence and on the property of the person exploiting
children. 

According to appellant, paragraphs 11 and 12 omit the material fact that Detective
Sunley’s experience as a law enforcement officer does not include any investigations
of offenses committed in violation of section 21.15. Thus, appellant, in effect,
contends that those paragraphs should have read, for example, “Although I have never
before investigated a crime pursuant to section 21.15, in my experience as a law
enforcement officer . . . .” However, even if such a caveat regarding Detective
Sunley’s experience was included in the affidavit, the affidavit, taken as a whole,
would nevertheless have indicated that (1) Detective Sunley had experience
investigating “persons who sexually exploit children,” although no specific experience
with section 21.15; (2) in his experience, Detective Sunley learned that “persons who
sexually exploit children” store photographs of such exploitation on their personal
computer; (3) appellant was taking photographs of young girls’ buttocks without their
consent; and (4) appellant admitted downloading photographs of girls onto his
computer. We conclude that these statements, even accounting for Detective Sunley’s
lack of experience with section 21.15, would be sufficient for a finding of probable
cause. 
2. Staleness
          Second, appellant argues that the facts set out in the affidavit had become stale
by the time the warrant was issued. Appellant specifically points to the affidavit’s
eighth paragraph, which states that “[appellant] had been taken [sic] pictures of girls
before and after he took the photographs, he downloaded them onto his computer at
home.” According to appellant, because this statement provides no date, or even a
timeline, indicating when the alleged illegal activity took place, the affidavit fails to
provide a basis for probable cause. See Schmidt v. State, 659 S.W.2d 420 (Tex. Crim.
App. 1983) (holding that an affidavit which fails to indicate when an unlawful act
occurred is insufficient to support issuance of search warrant). Appellant recognizes
that the affidavit does state that appellant was taking photographs of girls on March
29, 2002, but he avers that the photographs taken on that day could not yet have been
downloaded onto appellant’s computer because the camera used to take the
photographs had been seized that same day. 
          To justify a magistrate’s finding that an affidavit is sufficient to establish
probable cause to issue a search warrant, the facts set out in the affidavit must not
have become stale when the magistrate issues the search warrant. Guerra v. State, 860
S.W.2d 609, 611 (Tex. App.—Corpus Christi 1993, pet. ref’d); see also State v. Stone,
137 S.W.3d 167, 178 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d); Rowell v.
State, 14 S.W.3d 806, 809 (Tex. App.—Houston [1st Dist.] 2000), aff’d, 66 S.W.3d
279 (Tex. Crim. App. 2001); Hafford v. State, 989 S.W.2d 439, 440 (Tex.
App.—Houston [1st Dist.] 1999, pet. ref’d). Probable cause ceases to exist when, at
the time the search warrant is issued, it would be unreasonable to presume the items
remain at the suspected place. Guerra, 860 S.W.2d at 611. The proper method to
determine whether the facts supporting a search warrant have become stale is to
examine, in light of the type of criminal activity involved, the time elapsing between
the occurrence of the events set out in the affidavit and the time the search warrant
was issued. Id. When the affidavit recites facts indicating activity of a protracted and
continuous nature—i.e., a course of conduct—the passage of time becomes less
significant. Lockett v. State, 879 S.W.2d 184, 189 (Tex. App.—Houston [14th Dist.]
1994, pet. ref’d).
          Here, Detective Sunley’s affidavit indicates that appellant stated that he
downloaded pictures of girls onto his personal computer and that in Detective
Sunley’s experience as an investigator, sexually inappropriate photographs of children
are typically stored on personal computers. Furthermore, the affidavit states that
appellant admitted taking pictures of girls on the beach on March 29, 2002, the day
of his arrest. The pictures appellant admitted to taking depicted, in part, the buttocks
of young girls. 
          Detective Sunley’s affidavit was subscribed and sworn to before the magistrate
on April 2, 2002, four days after appellant’s arrest. The affidavit recites primarily
facts that occurred on March 29 or between March 29 and April 2. Moreover, while
the affidavit does not provide a specific time frame for when appellant downloaded
photographs onto his computer, the magistrate could have reasonably inferred that the
illegal activity described in the affidavit was of a continuous and protracted nature,
making the passage of time between this activity and appellant’s arrest less relevant. 
See Lockett, 879 S.W.2d at 189 (Tex. App.—Houston [14th Dist.] 1994, pet. ref’d)
(recognizing that when an affidavit properly recites facts indicating activity of
protracted and continuous nature, passage of time becomes less significant). Such a
conclusion is reinforced by the type of evidence sought, namely, according to the
affidavit, photographic images that tend to be downloaded and stored on personal
computers. See id. The evidence, therefore, was not of a sort that is transient in
nature, such as drugs which are consumed, but rather was evidence that Detective
Sunley believed, based on his experience, to be preserved and referred to over a
protracted period of time. Consequently, we conclude that the affidavit was not
insufficient to support a finding of probable cause due to staleness. 
3. Conclusory Statements 
          Third, appellant argues that Detective Sunley’s affidavit includes conclusory
statements that, taken as a whole, render the affidavit insufficient to show probable
cause. Specifically, appellant contends that the affidavit relies on conclusory
statements to account for two elements of a section 21.15 offense—lack of consent
and intent to arouse or gratify the sexual desire of any person. See Tex. Pen. Code
Ann. § 21.15. Appellant further notes that the affidavit, in paragraph eight, refers
only to appellant admitting to downloading photographs of girls onto his computer
while providing no description of what those downloaded photographs depicted, and
thus no information regarding whether or not the downloaded photographs were taken
without their subject’s consent or for the purposes of sexual gratification or arousal. 
In addition, appellant asserts that Detective Sunley’s statements regarding his
experience investigating persons who sexually exploit children were conclusory
because the affidavit contains no information indicating that appellant had ever
perpetrated crimes of a sexual nature against children. 
          An affidavit for a search warrant is sufficient to establish probable cause if,
from the totality of the circumstances reflected in the affidavit, the magistrate was
provided with a substantial basis for concluding that probable cause existed. Gates,
462 U.S. at 238–39, 103 S. Ct. at 2332; Stone, 137 S.W.3d at 175. In determining the
validity of the trial court's ruling on a challenge to a search warrant affidavit, great
deference should be paid to the magistrate’s determination, and courts should interpret
affidavits in a common sense, rather than a hypertechnical, manner. Gates, 462 U.S.
at 236, 103 S. Ct. at 2331. It is the duty of the reviewing court, however, to ensure the
magistrate had a substantial basis for concluding that probable cause existed. Id. at
238–39, 103 S. Ct. at 2332. Referring to conclusory statements and “bare-bones”
affidavits, the United States Supreme Court noted in Gates that, “In order to ensure
that . . . an abdication of the magistrate’s duty does not occur, courts must continue
to conscientiously review the sufficiency of affidavits on which warrants are issued.” 
Id. at 239, 103 S. Ct. at 2332–33. Thus, a mere conclusory statement will not suffice
for a showing of probable cause. See id.
          Here, interpreting the totality of the circumstances reflected in the affidavit in
a common sense manner, we conclude that the affidavit did not rely on conclusory
statements to such an extent that it was insufficient to show probable cause. As noted,
the affidavit, taken as a whole, demonstrates that Detective Sunley had reason to
believe that appellant was taking “photograph[s] [of] another without that person’s
consent with the intent to gratify his sexual desire.” Detective Sunley’s affidavit
explains the basis for his belief, namely, the fact that: (1) the pictures on appellant’s
camera “were mostly those of young female children showing them only from the
waist down”; (2) “it was obvious the photos were taken without the knowledge or
consent of the people”; (3) appellant admitted taking pictures of girls on previous
occasions; and (4) appellant stated that he downloaded pictures of girls onto his
computer. It is true, as appellant notes, that the affidavit does not describe the nature
of the pictures appellant admits to downloading, but based on the totality of the
circumstances, one could reasonably infer that the pictures were probably similar to
those described in the affidavit. Similarly, while the affidavit is somewhat threadbare
in terms of delineating how appellant’s photographs were intended to arouse or
sexually gratify the desire of another person, one could reasonably infer that pictures
depicting the “[clothed] buttocks of several female beach goers” are probably intended
to elicit some form of sexual arousal or gratification. We thus conclude that the
affidavit is not insufficient to show probable cause due to excessive reliance on
conclusory statements. 
          Having found, contrary to appellant’s claims, that Detective Sunley’s affidavit
was not fatally flawed due to (1) material omissions, (2) staleness, or (3) conclusory
statements, we overrule appellant’s sole point of error. 
CONCLUSION
          We affirm the judgment of the trial court.
 

 



Evelyn V. Keyes
Justice

Panel consists of Justices Taft, Keyes, and Hanks.

Publish. Tex. R. App. P. 47.2(b).